CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 26 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:08CR00005-8 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHELLE ECKERMAN, | ) | |
| a/k/a "Michelle M. Eckerman" | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a multiple-count Indictment charging defendant in Count One with conspiracy, in violation of Title 18, United States Code, Section 371, and in Count Three with conspiracy to traffic identity documents, all in violation of Title 18, United States Code, Section 1028.

On September 22, 2008, a plea hearing was conducted before the undersigned, and pursuant to the terms of the plea agreement[1], the defendant entered a plea of guilty to Count One of the Indictment. At this hearing the defendant was placed under oath and testified her full legal name is Michelle Marie Eckerman, and that she goes by the name "Shelly." The defendant further testified that she was born on November 23, 1980, and she received one year of college education. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequences of pleading guilty to those charges. The defendant further testified that she was not under the influence of

---

[1] There are numerous handwritten alterations to the typed plea agreement. All alterations have been initialed by both the defendant and her counsel.

alcohol, medicine, or any drug. The defendant stated that she had no physical or mental condition which impaired her ability to understand the nature of the proceedings being held. The defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense.

The defendant testified that she had received a copy of the Indictment pending against her and that she had fully discussed the charges therein, and her case in general, with her counsel. The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, assurances, or threats in an effort to induce her plea. The defendant testified that she understood that Count One is a felony, and if her plea is accepted, she will be adjudged guilty of that offense, and the government will move for the dismissal of Count Three of the Indictment.

The defendant was informed that the maximum possible penalty for Count One is a $250,000 fine, five years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was informed that the maximum possible penalty for Count Three is a $250,000 fine, fifteen years imprisonment, a special assessment of $100, and a period of supervised release. The defendant was further informed that parole has been abolished and that if she is sentenced to prison, she will not be released on parole but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that she understood that she will be required to pay a mandatory assessment of $100 per felony count of conviction, or $100.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the

Sentencing Guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

The defendant agreed that all matters pertaining to any counts, including dismissed counts, is relevant conduct for purposes of sentencing. The defendant admitted both she and the government had stipulated that USSG §§ 2X1.1, 2L2.1(a), 2L2.1(b)(2)(A), and 3B1.2(b) are applicable to her criminal conduct, and that the government will not object to any alternatives to incarceration available within the applicable guideline range. The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because she meets the listed criteria, the government will recommend an additional one-level (1) reduction under USSG § 3E1.1(b), if applicable. The defendant also stated that she understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, she must provide such assistance in a manner set forth in the plea agreement. The defendant stated that she understood that a determination as to whether she had provided "substantial assistance" was a matter within the discretion of the United States Attorney's Office. The defendant was informed that if she fulfills her obligations under the plea agreement, the government had agreed to recommend a sentence at the low end of the guidelines range, but that the

government would object if she moved for a downward departure. The defendant acknowledged she knew that this was merely a recommendation, and that the court was free to sentence her to the maximum provided by law.

The defendant acknowledged she knew that despite the court's recommendations for the location of service for any term of imprisonment, it is up to the Bureau of Prisons to determine where she will serve any sentence imposed. The defendant was informed that any information she gives during a proffer or cooperation will not be used against her to enhance her sentence pursuant to USSG § 1B1.8, but that the information could be used to show she was accepting responsibility. The defendant acknowledged that any fines, assessments and restitution would be payable in full immediately upon entry of a judgment of conviction, but because she doesn't have the means to pay it at that time, she agreed to make good faith efforts toward payment of any restitution obligation imposed. The defendant admitted she knew she would be required to submit a financial statement revealing all her assets and liabilities within thirty days after the date of her plea agreement. After completion of this financial statement, defendant agreed she would not convey anything of value without authorization from the government.

The defendant acknowledged that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless she voluntarily elects to do so in her own defense;

4

7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that she understood that under the terms of the agreement she was waiving rights to appeal or collaterally attack her conviction or sentence.[2] The defendant stated she was aware that the government had retained its right to appeal any sentence imposed below the applicable Sentencing Guidelines range or below the government's recommended sentence. The defendant stated that she was waiving her right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated.

The defendant also testified that she understood that if she is adjudged guilty of these charges, she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that she was fully satisfied with the advice and representation given to her in this case by her counsel, she believed the representation had been effective, and that her attorney had been "pretty cool." The defendant asked the court to accept her plea of guilty to Count One.

## THE GOVERNMENT'S EVIDENCE

The defendant waived her right to have the government's Factual Summary read in open court, and she had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged, is as follows:

If this matter were to go to trial, the United States of America would prove with admissible and relevant evidence, including the testimony of co-conspirators, the following:

At all times relevant to the pending Indictment, MICHELLE ECKERMAN resided in Ohio and was an employee of the Scarbourgh Boulevard Deputy Registrar office for the Ohio Bureau of Motor

---

[2]The defendant's waiver excludes any appeal or motion on the grounds of ineffective assistance of counsel or prosecutorial misconduct not known to her at the time of her guilty plea. (Plea Agreement, p. 7 ¶11.)

5

Vehicles (BMV) located in Columbus, Ohio. The BMV is responsible for: licensing persons to operate motor vehicles; registering motor vehicles; and other functions prescribed by law, including issuing Ohio State Identity Cards. The BMV's authority is derived from the powers vested in the Ohio Registrar of Motor Vehicles, who is appointed by and reports directly to the Ohio Director of Public Safety.

The Ohio State Registrar, with the approval of the Ohio Director of Public Safety, is permitted to appoint deputy registrars throughout the eighty-eight counties of Ohio. Deputy Registrars may be selected from private citizens or nonprofit corporations, as well as county auditors and clerks of courts of common pleas in counties having a population of less than forty thousand. All appointments are made through a competitive selection process, but the Ohio State Registrar may exercise his discretion in choosing those who he believes would best serve the interests and needs of the State of Ohio and its citizens.

The contractual arrangement between the Registrar and each Deputy Registrar is in the nature of a non-exclusive, limited franchise agreement. The Deputy Registrars are authorized, by the State of Ohio, to perform governmental licensing functions. Deputy Registrar's are considered independent contractors. Neither the Deputy Registrars nor those they hire are employees of the State of Ohio.

Defendants JOSE ANTONIO GUTIERREZ-RAMIREZ and CHRISTINA CHEATHAM were conduits between individuals with bogus identity documents seeking legitimate Ohio Identification Cards and Defendants NEKIA MACK-FULLER and ECKERMAN. MACK-FULLER and ECKERMAN were employed at the Scarbourgh Boulevard BMV and their duties included the processing of applications for identity documents. With the assistance of Defendant ECKERMAN, Defendants GUTIERREZ-RAMIREZ's and CHEATHAM's "clients" applied for and obtained Ohio identity cards. In return for processing the applications, GUTIERREZ-RAMIREZ provided "tips" to Scarborough Boulevard employees for their assistance. Although the Scarbourgh Boulevard Deputy Registrar office was aware that "tips" were being provided by GUTIERREZ-RAMIREZ for processing

6

identity card applications, this fact was not reported to the Ohio Director of Public Safety investigators and a record of the amount of "tip" income was not maintained nor reported to the Internal Revenue Service.

In September of 2007, agents of the Department of Homeland Security's Immigration and Custom Enforcement in Harrisonburg, Virginia, within the Western District of Virginia, initiated undercover operations to identify a known illegal document vendor. On September 24, 2007, Defendant EDWIN MENDEZ sold a Puerto Rican birth certificate and Social Security card to a Confidential Informant (CI). The name on the Social Security Card matched the name on the birth certificate. MENDEZ charged $600 for the identity documents and informed the CI that he could make arrangements for the CI to be transported to Ohio to obtain an Ohio Identification Card from a BMV office. After the first purchase, MENDEZ sold multiple Puerto Rican identity documents to the CI, some belonging to children as young as two years old. It has been determined that LUIS E. TORO provided a large number of the Puerto Rican identity documents to Defendant MENDEZ, including those processed by ECKERMAN at the Scarborough Deputy Registrar's office.

On October 3, 2007, the CI and other Virginia impostors began traveling in an extended cab pick-up truck from Harrisonburg, Virginia to Columbus, Ohio. The pick-up truck was driven by Defendant JAIRO GOMEZ. The truck passengers were taken to the residence of Defendants GUTIERREZ-RAMIREZ and CHEATHAM for instructions regarding the application process.

On October 4, 2007, the CI and the other Virginia truck passengers were transported by Defendant GUTIERREZ-RAMIREZ to the Ohio to the BMV office at 2516 Scarborough Boulevard in Columbus, Ohio. Once at the location, Defendants MACK-FULLER and ECKERMAN processed the Virginia pick up truck passengers' applications for Ohio Identity Cards using the truck passengers' Puerto Rican identity documents. The CI and the others who traveled with him secured authentic Ohio Identity Cards using the Puerto Rican identity documents.

During the October 4 undercover operation, ECKERMAN was observed by an Immigration and Customs Enforcement Special Agent advising Defendant CHEATMAN that an individual applying for an identity card needed to re-sign the application using the name contained on the Puerto Rican birth certificate, which was being presented as an identity source document. This was to insure that an identity card would be issued after the application was processed.

During a two year period of time, it has been determined that GUTIERREZ-RAMIREZ, with the assistance of Defendant CHEATHAM, made two or three visits a week to the BMV. In an average week, twenty impersonators were transported to the BMV, each possessing illegally obtained identification documents. Defendant ECKERMAN processed over 200 applications for Ohio Identity Cards using Puerto Rican Social Security Numbers.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of her plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count One of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count One of the Indictment. The undersigned DIRECTS that a

presentence report be prepared. A sentencing hearing hereby is scheduled for January 12, 2009 at 9:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

9/26/08
Date